**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION**

CASE NO.: 9:25-CV-80930

ELLIOTT BROIDY,

    *Plaintiff*,

v.

AMERICAN EXPRESS COMPANY and
AMERICAN EXPRESS NATIONAL
BANK,

    *Defendants.*

**COMPLAINT FOR DAMAGES, DECLARATORY JUDGMENT,
AND INJUNCTIVE RELIEF**

Plaintiff Elliott Broidy brings this civil action against Defendants American Express Company and American Express National Bank (together, "Amex").

**INTRODUCTION**

1. This action arises from Amex's violations of Elliott Broidy's rights under the Equal Credit Opportunity Act, 15 U.S.C. § 1691 *et seq*. ("ECOA"). ECOA's notice requirement obligates creditors such as Amex to disclose in writing the specific reason for denying someone's application for credit. *Id*. §§ 1691(d)(2)–(3). Amex violated ECOA's notice requirement when it denied Mr. Broidy credit earlier this year.

2. In February, 2025, Amex denied Mr. Broidy's application for a credit card without disclosing any reasons for its denial. Instead, Amex's denial letter stated that if he "would like to know the reason for our decision … [he] can call us[.]"

3. Mr. Broidy did so. In April, 2025, he spoke with three Amex representatives. Mr. Broidy asked all three for a written statement of the specific reason for the denial of his credit application. Yet Amex still did not provide such a statement.

4. In May, 2025, Mr. Broidy sent Amex's Executive Office a letter asking for the statement it owed him. Amex ignored his letter.

5. After more than a month with no response from Amex, Mr. Broidy sent Amex another letter in June, 2025. Amex finally responded later that month with a letter stating that its "decline decision remains based on your history with American Express." This writing violated ECOA's notice requirement because the opaque and generic reference to Mr. Broidy's "history" with Amex failed to disclose the specific reason for Amex's decision.

6. Amex is liable under ECOA for its multiple violations of the notice requirement between February and June, 2025.

## PARTIES

7. Plaintiff Elliott Broidy is a citizen of the United States and a resident of the State of Florida.

8. Defendant American Express Company is a financial service corporation and bank holding company based in New York, New York.

9. Defendant American Express National Bank is a bank ultimately owned by American Express Company.

## JURISDICTION AND VENUE

10. This Court has original jurisdiction pursuant to 15 U.S.C. § 1691e(f) as this action arises under ECOA, 15 U.S.C. § 1691 *et seq*. *See also* 28 U.S.C. § 1331.

11. This action has been brought in "the appropriate United States district court[.]" 15 U.S.C. § 1691e(f). Plaintiff resides in this district, Defendants conduct widespread business in this district, and a substantial part of the events or omissions giving rise to Plaintiff's ECOA claim against Defendants occurred in this district. *See* 28 U.S.C. § 1391(b).

## FACTUAL ALLEGATIONS

12. Elliott Broidy is a businessman, entrepreneur, and philanthropist. He is the Chairman and Chief Executive Officer of an investment firm, Broidy Capital Holdings, LLC, based in Boca Raton. During his long career, Mr. Broidy has founded, invested in, or managed some 160 companies.

13. Mr. Broidy has served in prominent roles within the Republican Party. He served as Finance Chairman of the Republican National Committee ("RNC") from 2005 to 2008 and as Deputy Finance Chairman of the RNC from 2015 to 2017, during the first Trump administration.

14. Mr. Broidy is very creditworthy. He has substantial assets deposited in financial institutions and has excellent credit history. He has been issued credit cards by multiple credit card companies, including, in the past, Amex.

15. Because of his creditworthiness, Mr. Broidy had never been "debanked" by a credit card company—until American Express debanked him earlier this year.

16. In February 2025, Mr. Broidy asked the operations manager at Broidy Capital Holdings, which has a corporate account with Amex, to obtain an additional credit card in Mr. Broidy's name. The operations manager submitted the application for an American Express Business Gold Card for Mr. Broidy.

17. By letter dated February 21, 2025, Amex denied the application. A copy of the letter is attached as Exhibit A.

18. The letter stated: "Unfortunately, we're unable to approve your request to issue an Additional Card on your account to the person indicated on your application. If the Additional Card applicant would like to know the reason for our decision or has any questions, they can call us at the number below."

19. The letter also noted that "[t]he creditor is American Express National Bank."

20. On April 30, 2025, Mr. Broidy called the phone number provided in the letter and spoke with an Amex representative named "Kia." At first Kia insisted that Mr. Broidy's operations manager had to be on the phone call. Mr. Broidy disputed that, noting that Amex's letter stated that "[i]f the Additional Card applicant"—which is Mr. Broidy—has questions, "they can call us."

21. While speaking with Kia, Mr. Broidy repeatedly asked to receive Amex's reasons for the denial in writing. Kia did not send him a written statement.

22. Kia told Mr. Broidy that Amex denied his credit application "due to your history with Amex." Mr. Broidy was confused by that statement as he does not have a negative history with Amex. When pressed for more information, Kia was unable

4

to provide it. Due to Kia's inability to provide an explanation, Mr. Broidy asked to speak with a supervisor.

23. Mr. Broidy then spoke with an account supervisor named "Maria." Maria repeated the same uninformative statement that Kia had told him—that Amex denied the credit application "due to your history with Amex." Mr. Broidy again replied that that had to be untrue, and repeated to her that he has no history with Amex that would give it any reason to deny him credit.

24. Mr. Broidy repeatedly told Maria that he wanted a written explanation for the denial of credit. Maria did not send him one.

25. Maria told Mr. Broidy that the specialist department may be able to provide further information, and she connected him with "Ame" from that department.

26. Ame in the specialist department said that Mr. Broidy was denied a credit card "due to previous Amex cards." This, however, made no sense to Mr. Broidy. Mr. Broidy once had an American Express Black Card and had an excellent payment history for that card. Ame told Mr. Broidy that, to learn more, he had to write a letter to Amex's Executive Office in New York.

27. None of the Amex representatives whom Mr. Broidy spoke with on April 30, 2025, sent him, or caused to be sent to him, a written statement of the reason for Amex's denial of credit.

28. Following Ame's suggestion, Mr. Broidy, through counsel, sent a letter to Amex's Executive Office on May 7, 2025. A copy of the letter is attached as Exhibit B [enclosures omitted].

29. Mr. Broidy's letter requested a written statement of the specific reason that Amex denied him credit. His letter also asked Amex to explain what about his history with the company had led it to deny him credit.

30. After Mr. Broidy sent this letter by overnight delivery, confirmed to have been received on May 8, 2025 (see Ex. B at PDF p. 4), six weeks went by without any response from Amex.

31. Therefore, Mr. Broidy through counsel sent a second letter, this one dated June 18, 2025. A copy of this letter is attached as Exhibit C [enclosures omitted]. The June 18, 2025 letter again requested a written statement of the specific reason that Amex had denied Mr. Broidy a credit card.

32. In late June 2025, Mr. Broidy finally received a letter, dated June 23, 2025, from Amex's Executive Office. A copy of the letter is attached as Exhibit D.

33. The letter's return address was an address in Sunrise, Florida.

34. The letter stated that "[a]n evaluation of your application was conducted and unfortunately our decline decision remains based on your history with American Express." The letter did not, however, explain what it meant by Mr. Broidy's "history" with Amex.

35. The letter also stated that "[w]e are committed to making sure all credit worthy customers have equal access to credit"—implying that Mr. Broidy is not credit

6

worthy, which is false. Other credit card companies have extended credit to Mr. Broidy, and no such company has ever denied him credit—except for Amex.

36. The letter went on to say that "[t]he actions taken on your application were based on valid reasons and in accordance with our policies and procedures." The letter failed, however, to articulate what those "valid reasons" were. Nor did the letter explain how Amex's adverse action as to Mr. Broidy complied with Amex's "policies and procedures," which were neither described nor enclosed.

37. The letter closed by stating that any "[f]uture communication received" from Mr. Broidy "without new details" would be "filed with no further response." It did not explain what "new details" would suffice to warrant a response.

38. Mr. Broidy's affiliation with the Republican Party and President Donald Trump are well known. Given Amex's persistent failure to explain its adverse credit action against Mr. Broidy in violation of ECOA, it is fair to infer that Amex denied Mr. Broidy credit based on prohibited grounds.

39. Politically motivated debanking is illegal in Florida. Under Florida law, it is unlawful for a financial institution to deny services to a person based on "the person's political opinions, speech, or affiliations." Fla. Stat. § 655.0323(2).

40. Mr. Broidy intends to file a written complaint about Amex's debanking of him with the Office of Financial Regulation, the Florida agency that investigates violations of Section 655.0323.

## CLAIM FOR RELIEF:
### Failure to Disclose Specific Reason for Denial of Credit
### (Equal Credit Opportunity Act)

41. Plaintiff re-alleges and incorporates by reference the prior paragraphs of this Complaint as though fully set forth here.

42. Under ECOA, the term "applicant" means "any person who applies to a creditor directly for an extension, renewal, or continuation of credit[.]" 15 U.S.C. § 1691a(b). Plaintiff was an "applicant" within the meaning of ECOA.

43. Under ECOA, the term "creditor" means "any person who regularly extends, renews, or continues credit[.]" 15 U.S.C. § 1691a(e). This definition applies to corporations. *Id.* § 1691a(f). Defendants are "creditor[s]" within the meaning of ECOA.

44. Under ECOA, the term "adverse action" means "a denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested." 15 U.S.C. § 1691(d)(6). Defendants took such "adverse action" against Plaintiff when they denied his application for credit.

45. ECOA's notice requirement provides in part that "[e]ach applicant against whom adverse action is taken shall be entitled to a statement of reasons for such action from the creditor." 15 U.S.C. § 1691(d)(2).

46. A creditor may attempt to satisfy the notice of requirement by "providing statements of reasons in writing as a matter of course to applicants against whom adverse action is taken[.]" 15 U.S.C. § 1691(d)(2)(A). Defendants did not satisfy their

obligation to Plaintiff in this way; their initial letter of February 21, 2025, did not provide a statement of reasons for their adverse action.

47. A creditor may also satisfy its obligation by "giving written notification of adverse action which discloses (i) the applicant's right to a statement of reasons …, and (ii) the identity of the person or office from which such a statement may be obtained." 15 U.S.C. § 1691(d)(2)(B). Defendants did not satisfy their obligation to Plaintiff in this way; their February 21, 2025 letter to him did not disclose the above information.

48. A statement of reasons "may be given orally if the written notification advises the applicant of his right to have the statement of reasons confirmed in writing on written request." 15 U.S.C. § 1691(d)(2)(B). The February 21, 2025 letter did not advise Plaintiff of this right.

49. ECOA's notice requirement also provides that "[a] statement of reasons meets the requirements of this section only if it contains the specific reasons for the adverse action taken." 15 U.S.C. § 1691(d)(3).

50. Regulations issued by the Board of Governors of the Federal Reserve System and the Consumer Financial Protection Bureau further provide that "[t]he statement of reasons for adverse action … must be specific and indicate the principal reason(s) for the adverse action." 12 C.F.R. § 202.9(b)(2); 12 C.F.R. § 1002.9(b)(2).

51. The regulations also state that "[s]tatements that the adverse action was based on the creditor's internal standards or policies … are insufficient." 12 C.F.R. § 202.9(b)(2); 12 C.F.R. § 1002.9(b)(2).

52. A creditor's statement of reasons, in addition to being specific, must disclose the actual reason for the creditor's decision. "The specific reasons disclosed … must relate to and accurately describe the factors actually considered or scored by a creditor." 12 C.F.R. Pt. 202, Supp. I, cmt. 9(b)(2)-2; 12 C.F.R. Pt. 1002, Supp. I, cmt. 9(b)(2)-2. Defendants failure to comply with ECOA's notice requirement makes it impossible to determine if they disclosed, without the required specificity, the actual reason for their decision to debank him.

53. Between February and June, 2025, Defendants violated ECOA's notice requirement multiple times in multiple ways.

54. Defendants' letter dated February 21, 2025, failed to disclose any reason for the adverse credit action Defendants took against Plaintiff. Nor did Defendants' letter disclose Plaintiff's "right to a statement of reasons"; identify "the person or office from which such a statement may be obtained"; or advise him of "his right to have the statement of reasons confirmed in writing[.]" 15 U.S.C. § 1691(d)(2)(B).

55. Although Plaintiff asked three of Defendants' representatives on April 30, 2025, for a written statement of the reasons for Defendants' adverse action on his credit application, Defendants failed to provide such a statement. Defendants therefore violated 15 U.S.C. § 1691(d)(2)(B).

56. In violation of ECOA and its implementing regulations, Defendants' letter dated June 23, 2025, failed to disclose the specific, principal reason(s) for the adverse credit action Defendants took against Plaintiff.

57. Defendants' opaque and generic reference to Plaintiff's "history" failed to inform Plaintiff of "precisely the problem that ... [the] statement of reasons was referencing[.]" *Barat v. Navy Fed. Credit Union*, 127 F.4th 833, 837 (11th Cir. 2025). Plaintiff could not tell from Defendants' letter what supposed problem with his "history" Defendants were referencing.

58. A creditor that fails to comply with ECOA's requirements is liable to the aggrieved applicant for both actual and punitive damages. 15 U.S.C. §§ 1691e(a)-(b).

59. A court may grant an aggrieved applicant any equitable and declaratory relief necessary to enforce the requirements of ECOA. 15 U.S.C. § 1691e(c).

60. In a "successful action" under ECOA, the plaintiff's costs and reasonable attorney's fees shall be added to the court's award of damages. 15 U.S.C. § 1691e(d).

**PRAYER FOR RELIEF**

WHEREFORE, having elected the remedies available under ECOA, Plaintiff prays for the following relief:

A. Actual damages pursuant to 15 U.S.C. § 1691e(a);

B. Punitive damages pursuant to 15 U.S.C. § 1691e(b);

C. Judgment pursuant to 15 U.S.C. § 1691e(c) declaring that Defendants' failure to provide a written statement of the specific reason for its denial of credit to Plaintiff was unlawful and violated ECOA's notice requirement;

D. An injunction pursuant to 15 U.S.C. § 1691e(c) requiring Defendants to disclose its actual and specific reason for denying Plaintiff credit;

  E. An injunction pursuant to 15 U.S.C. § 1691e(c) requiring Defendants to grant Plaintiff's application for credit;

  F. An injunction pursuant to 15 U.S.C. § 1691e(c) enjoining Defendants from violating Plaintiff's rights under ECOA in the future;

  G. Any other equitable or declaratory relief necessary to enforce ECOA's requirements, pursuant to 15 U.S.C. § 1691e(c);

  H. Attorney's fees and costs pursuant to 15 U.S.C. § 1691e(d); and

  I. Such further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands trial by jury.

            Respectfully submitted,

            */s/ Edward H. Trent*
            H. Christopher Bartolomucci*
             (D.C. Bar No. 453423)
            Edward H. Trent (FBN 957186)
            SCHAERR | JAFFE LLP
            1717 K Street NW, Suite 900
            Washington, DC 20006
            Telephone: (202) 787-1060
            Facsimile: (202) 776-0136
            cbartolomucci@schaerr-jaffe.com
            etrent@schaerr-jaffe.com

            **Pro hac vice* motion forthcoming

            *Counsel for Plaintiff Elliott Broidy*

Dated:  July 25, 2025