IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

| | |
|---|---|
| ELLIOTT BROIDY, <br><br> Plaintiff, <br><br> v. <br><br> AMERICAN EXPRESS COMPANY; and AMERICAN EXPRESS NATIONAL BANK, <br><br> Defendants. | Case No:   9:25-cv-80930 |

### DECLARATION OF RAQUEL HERNANDEZ

I, Raquel Hernandez, hereby declare and state as follows:

1. I am currently an Assistant Custodian of Records for American Express National Bank ("AENB") and its affiliates and subsidiaries, including those of American Express Travel Related Services Company, Inc. ("TRS" and together with AENB and its affiliates and subsidiaries, "American Express"). I have held this position for approximately 9 years and have been employed with American Express or one of its predecessor or affiliate entities for 19 years. TRS is incorporated in New York with its main office in New York. AENB is a national bank with its main office in Utah. AENB is a wholly owned subsidiary of TRS, whose parent is American Express Company ("AEC"). Except where based on my review of records and documents regularly maintained in the ordinary court of AENB's business, all of the matters set forth below are within my personal knowledge and, if called as a witness, I could and would testify thereto.

2. In connection with my duties as Assistant Custodian of Records, I have access to and am generally familiar with the cardmember account records American Express maintains,

including account statements provided to cardmembers and the governing Cardmember Agreements. American Express created and kept the account records and exhibits referred to herein in the ordinary course of its business and the account records were created at or near the time of the occurrence of the matters set forth in those records and/or were created based upon information transmitted by a person with knowledge of the matters set forth in those records.

3. Plaintiff Elliott Broidy has a history with American Express as a cardholder under different accounts, including but not limited to as a supplementary cardholder (sometimes known as a "Supp") for Corporate Card and individual Card accounts and as the primary cardmember (also known as the "Basic" or "Basic Cardmember") for at least one Corporate Card account opened for Circinus LLC ("Circinus").

4. I have reviewed TRS's records concerning the American Express Corporate Platinum account ending in 2008 opened for Circinus (the "Circinus Account") and the accompanying American Express Corporate Platinum Card issued to Plaintiff Elliott Broidy, as the Basic Cardmember for the Circinus Account. TRS's records reflect the Circinus Account was opened on or about January 29, 2016.

5. I have also reviewed AENB's records concerning the American Express Business Gold account ending in 1004 opened for Broidy Capital Holdings, LLC ("Broidy Capital") (the "Broidy Capital Account") and the accompanying Business Gold Card issued to non-party Andrew Kang, as the Basic Cardmember for the Broidy Capital Account. AENB's records reflect the Broidy Capital Account was opened on or about December 13, 2024.

6. All card accounts are governed by a written agreement, and subsequent updates where applicable, setting forth the terms and conditions of the account (each, a "Cardmember Agreement"). Pursuant to AENB's and TRS's standard business practices, initial Cardmember

Agreements are mailed to card accountholders together with their physical card upon the opening of their accounts, and periodic updates are mailed and/or contained in monthly statements. That procedure was in place and followed when AENB and TRS opened the respective Accounts.

7. Attached hereto as Exhibit 1 is a true and correct copy of the Cardmember Agreement that AENB mailed to Broidy Capital when AENB opened the Broidy Capital Account on or about December 13, 2024.

8. In addition, when opening its account, Broidy Capital agreed to TRS's Corporate Commercial Services Account Agreement.  Attached hereto as Exhibit 2 is a true and correct copy of the Corporate Commercial Services Account Agreement to which Broidy Capital agreed.

9. From my review of AENB and TRS's records concerning the Broidy Capital Account, Broidy Capital and Andrew Kang, as the Basic Cardmember on the Broidy Capital Account, retained and used their cards and made charges to the Broidy Capital Account, including as recently as February 2025.

10. From my review of TRS's records concerning the Circinus Account, the account terms were updated periodically before the account was ultimately closed on or about February 6, 2021.  The account terms in force when the account was closed by TRS are attached hereto as Exhibit 3.

11. From my review of the records concerning the Circinus Account, as the Basic Cardmember under that account, Elliott Broidy made charges to the Circinus Account through January 11, 2021.

12. The Cardmember Agreements governing both the Broidy Capital and Circinus Accounts also contained an opt-out mechanism to the Arbitration Provisions. Andrew Kang, Broidy Capital, Circinus, or Elliot Broidy could have opted out of the Arbitration Provisions in the

Cardmember Agreements by mailing a written rejection notice within 45 days after the first card purchase, but none did. I can determine this because it is AENB's and TRS's standard business practices to include a note in the computerized account records of those cardmembers who chose to opt out. The records for the Broidy Capital and Circinus Accounts do not reflect any such note, and there is no indication in the records for either Account that American Express was ever notified of their refusal to accept the terms of the Arbitration Provisions.

13. From my review of the records concerning the Circinus Account, American Express notified Elliott Broidy by letter dated February 6, 2021, attached hereto as Exhibit 4, that the Circinus Account ending 2008 was closed because "it was not being used for its intended purpose."

14. From my review of the records, American Express notified Elliott Broidy of the cancellation of at least three additional cards in letters dated March 27, 2019 (attached hereto as Exhibit 5), April 11, 2022 (attached hereto as Exhibit 6), and April 11, 2022 (attached hereto as Exhibit 7).

Pursuant to 28 U.S.C. section 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 27th day of August, in Maricopa County, Arizona.

_____
Raquel Hernandez