IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

| | |
|---|---|
| ELLIOTT BROIDY,<br><br>    Plaintiff,<br><br>    v.<br><br>AMERICAN EXPRESS COMPANY; and<br>AMERICAN EXPRESS NATIONAL BANK,<br><br>    Defendants. | Case No: 9:25-cv-80930 |

**AMERICAN EXPRESS COMPANY AND AMERICAN EXPRESS NATIONAL BANK'S
REPLY IN SUPPORT OF ITS MOTION TO DISMISS
<u>AND INCORPORATED MEMORANDUM OF LAW</u>**

Defendants American Express Company and American Express National Bank (together, "American Express" or "Amex"), hereby submit the following reply in support of their Motion to Dismiss:

## I.   INTRODUCTION

Plaintiff's response to Amex's motion ("Opposition") does nothing to salvage his flawed claim. To the contrary, the Opposition confirms three dispositive points: *First*, Plaintiff's ECOA claim is arbitrable. Under the 2024 Cardmember Agreement and the Claims Resolution section therein, which includes an arbitration agreement, the parties agreed that Amex could elect arbitration, including as to claims by a "related person[]" and "relating to . . . your application for any account." Plaintiff does not dispute he is a "related person"—Broidy Capital's Chairman and CEO—or that the claim is "relating to . . . your application for any account." Having attempted to invoke the benefits of that Agreement to obtain additional cards, Plaintiff cannot now avoid the Agreement's arbitration requirement. *Second*, even if the Court does reach the merits it should dismiss this case because Plaintiff, by his own logic, is not an "applicant" under ECOA; Broidy Capital (through the Basic Cardmember on the account) applied to add an additional user to the Company's account, and doing so furthered the Company's interests, not Plaintiff's.[1] *Third*, Amex satisfied ECOA's notice requirement as a matter of law by providing an accurate, specific reason for denying the application: Plaintiff's "history with American Express." In sum, Plaintiff's claim falls woefully short of the Rule 8 plausibility standard, as he asks the Court to ignore common sense and obvious facts in the record and accept his implausible tale of ignorance about what Amex

---

[1] Of course, there is an undeniable Catch-22: as Chairman and CEO, Broidy effectively **is** Broidy Capital and therefore cannot credibly argue that he's not directly subject to the applicable arbitration clause because the Cards are for the business. When your name is on the company, and you are the Chairman and CEO, the Company is you.

meant by Plaintiff's "history with American Express."

The Court should enforce the arbitration agreements and dismiss or, alternatively, dismiss the claim for lack of standing and/or failure to state a claim.

## II. ARGUMENT

**A. The Court Should Compel Arbitration.**

The Opposition attempts, unsuccessfully, to wriggle out from under the enforceability of the 2024 Cardmember Agreement and ignores the other applicable agreements—Broidy Capital's application for an account and the Cardmember Agreements governing Plaintiff's prior canceled Cards—each of which independently bind him to arbitration.

> *1. Plaintiff is Bound under the 2024 Cardmember Agreement from Which This Claim Arises.*

Utah's estoppel doctrine and Eleventh Circuit precedent require Plaintiff to arbitrate his claim under the 2024 Cardmember Agreement. (ECF No. 10 at 9–10; Decl. (ECF No. 11) Ex. 1 (ECF No. 11-1).) Specifically, Utah law recognizes the well-established estoppel principles[2] requiring arbitration "to prevent a nonsignatory's attempt to benefit from an agreement while seeking to avoid that same agreement's arbitration provision[.]" *Solid Q Holdings LLC v. Arenal Energy Corp.*, 2015 UT App 272, ¶ 12, 362 P.3d 295, 299. While Plaintiff argues that estoppel applies only where Plaintiff has signed the relevant contract, Utah law applies these principles: "if a nonsignatory sues under the contract or *seeks to benefit from that contract*." *Id.* at 298. Here, Plaintiff's claim only exists because, according to Plaintiff, "under basic principles of agency law,

---

[2] Plaintiff argues that because Amex raised the estoppel argument, in part, in a footnote that Amex therefore waived that argument. (ECF No. 23 at 6.) Not so. Amex's above-the-line argument on pages 5 and 6 of the Motion is based on the same equitable principles as equitable estoppel and the third-party beneficiary doctrine, and the footnote simply makes clear that Utah law recognizes the universally accepted equitable principle of estoppel against nonsignatories seeking to benefit from a contract while avoiding its obligations.

Broidy himself applied to Amex for access to the credit that Amex had extended to BCH." (ECF No. 23 at 11.) In other words, Plaintiff invoked the 2024 Cardmember Agreement to add himself as an Additional Cardmember to Broidy Capital's account and, when the request was rejected, he sued under ECOA. Because Plaintiff sought to benefit from the 2024 Cardmember Agreement, Utah law estops him from avoiding application of that Agreement's arbitration provision.

The Opposition relies on *Lubin v. Starbucks Corp.*, 122 F.4th 1314 (11th Cir. 2024), which applies Florida (rather than Utah) law and therefore does not apply here. Moreover, *Lubin* is factually distinct: in *Lubin*, the court declined to require the spouse of a fired Starbucks employee to arbitrate with Starbucks because his claim did not relate directly to his wife's employment agreement but instead pertained to a COBRA-related notice. *See id.* at 1317–18. Here, Plaintiff's claim does relate directly to the 2024 Cardmember Agreement given Plaintiff's affirmative attempts add himself as an Additional Cardmember to Broidy Capital's account (*see* ECF No. 1 ¶ 16.)

    2. *Plaintiff is Also Bound under the Other Arbitration Agreements.*

As explained in the Motion, two other agreements also bind Plaintiff to arbitration. (ECF No. 10 at 4–11.) The Opposition barely addresses these other agreements, flippantly asserting that "Amex has not shown that [Plaintiff] was a party to [one] agreement" (ECF No. 23 at 5) and ignoring another agreement entirely (*see generally id.*). In fact, Amex's Motion identifies three separate agreements that independently compel arbitration of Plaintiff's claims: (1) the 2024 Cardmember Agreement (discussed above); (2) the Corporate Services Commercial Account Agreement (Decl. Ex. 2 (ECF No. 11-2)); and (3) the Cardmember Agreement governing Plaintiff's previously issued, now-cancelled American Express Cards, cited in the Motion (ECF No. 10 at 7–11), discussed in the Declaration (Decl. ¶¶ 4, 10–12), and offered as an Exhibit (Decl.

-4-

Ex. 3 (ECF No. 11-3)).

Notably, the Opposition does not address the Cardmember Agreement governing Plaintiff's prior canceled Cards, which is unsurprising given that the agreement covers "any . . . future claim, dispute or controversy relating to your account(s), this Agreement, or any agreement or relationship you have or had with us," including claims based in "statute" and those related to "your application for any account." (ECF No. 11-3 at 4.) The arbitration provision states it "will survive" the account's termination. (*Id.* at 5.) Plaintiff's claim clearly falls into the scope of that agreement and Plaintiff does not dispute—nor could he—that he was a signatory to that contract. (*See* Decl. ¶¶ 4, 6, 10–12.); *see also Scott v. EFN Investments, LLC*, No. 08-80532-Civ, 2008 WL 11450706, at *2–4 (S.D. Fla. July 16, 2008) (Dimitrouleas, J.) (granting motion to dismiss and compelling arbitration of ECOA claim and other claims based on arbitration agreement that survived rescission of contract).

Plaintiff appears to concede that these two agreements apply and the Court must, therefore, compel arbitration. *See, e.g.*, *Jones v. Bank of Am., N.A.*, 564 F. App'x 432, 434 (11th Cir. 2014) ("[A] party's failure to respond to any portion or claim in a motion indicates such portion, claim or defense is unopposed") (citations and internal quotations omitted). And, it is axiomatic that Plaintiff's "history with American Express" relates to the prior Agreement.

3. *Amex Did Not Waive Its Arbitration Rights.*

Plaintiff's waiver theory (ECF No. 23 at 8–9) is also deficient. Amex promptly moved to compel arbitration and, as courts routinely allow, sought dismissal only in the alternative. (*See generally* ECF No. 10.); *see, e.g.*, *Bruce v. Happy Money, Inc.*, No. 1:24-cv-5027, 2025 WL 1276766, at *4 (N.D. Ga. Jan. 7, 2025); *see also Dockeray v. Carnival Corp.*, 724 F. Supp. 2d 1216, 1222 (S.D. Fla. 2010) (Altonaga, C.J.) (collecting cases). The unpublished Eleventh Circuit

case Plaintiff cites is wholly inapt. (ECF No. 23 at 8–9.) There, the defendant defended a case on the merits for over 18 months before moving to compel arbitration, exhibiting the type of gamesmanship the Eleventh Circuit has cautioned against. *See Davis v. White*, 795 F. App'x 764 (11th Cir. 2020) (quoting *Gutierrez v. Wells Fargo Bank,* NA, 889 F.3d 1230, 1236 (11th Cir. 2018)). By contrast, Amex has not "chang[ed] course midjourney . . . and pursue[d] arbitration when its prospects of victory in litigation dim[med]." *Id.* (quoting *Gutierrez*, 889 F.3d at 1236). Rather, Amex swiftly invoked its arbitration rights and sought arbitration only in the alternative. Plaintiff cannot plausibly contend that Amex, by seeking dismissal in the alternative, "intentional[ly] relinquished or abandon[ed] a known right." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 417 (2022) (quotation marks and citation omitted); *see also Cheshire v. Fitness & Sports Clubs LLC*, 382 F. Supp. 3d 1329, 1334 (S.D. Fla. 2019) (Dimitrouleas, J.) (compelling arbitration and rejecting waiver argument where a defendant asserted its right to arbitrate in its answer and filed a motion to compel arbitration months later); (ECF No. 11-1 at 9 ("Either you or we may delay enforcing or not exercise rights under this Arbitration provision, including the right to arbitrate a claim, without waiving the right to exercise or enforce those rights."))

  **B. In the Alternative, Plaintiff's Complaint Must be Dismissed For Lack of Subject-Matter Jurisdiction and Failure to State a Claim under ECOA.**

  *1. Plaintiff Lacks Statutory, Constitutional, and Prudential Standing.*

Plaintiff's claim also fails because, pursuant to his own tortured rejection of his CEO status, he lacks both constitutional standing under Article III and statutory standing under ECOA. Indeed Plaintiff was not an "aggrieved applicant" for ECOA purposes under clear Eleventh Circuit precedent because he requested no credit for himself, assumed no contractual liability, and his use of an additional card would only further Broidy Capital's interests. (ECF No. 10 at 13–15); *see, e.g.*, 15 U.S.C. § 1691a(b) (ECOA's private right of action belongs only to one who "applies . . .

directly for an extension . . . of credit"); *Regions Bank*, 936 F.3d at 1191 (holding the plain-meaning reading of an applicant is "one who requests credit to benefit himself"). While Plaintiff seeks to redefine "applicant" under ECOA to transform himself into one under the statutory definition (ECF No. 23 at 9–14), this effort fails.

*First*, Plaintiff made no request to Amex. (*See* ECF No. 1 at ¶ 16.) The application was submitted by the Basic Cardmember, Kang, under the Company's account (*see id.*), and American Express' denial letter was addressed to Kang, not Broidy (*see* ECF No. 1-4). Plaintiff tries to use agency principles to transform himself into an individual applicant, but Plaintiff is the principal of Broidy Capital (ECF No. 1 ¶ 12), and in that capacity told Kang to "obtain an additional credit card in [Plaintiff's] name." (*Id.* ¶ 16.) Thus, when Kang submitted an additional cardholder application on the company's corporate account, at the behest of the CEO, he acted not on behalf of Plaintiff individually, but on behalf of Broidy Capital. *Cf. Cedar Hills Props. Corp. v. E. Fed. Corp.*, 575 So. 2d 673, 676 (Fla. 1st DCA 1991) ("[A] corporation is a legal entity which can only act through its agents, officers and employees."). And the anticipated outcome of the request—expanding company purchasing capacity—could further only Broidy Capital's interests, not Plaintiff's in his individual capacity.

*Second*, Plaintiff did not request *credit*, as is required to be an "applicant." 15 U.S.C. § 1691a(b). Plaintiff relies on Regulation B's use of "includes" in an attempt to expand ECOA's reach to cover his claim. (ECF No. 23 at 12.) But the Act requires an applicant have sought an extension of "credit" and defines "credit" as "the right granted by a creditor to a debtor to defer payment of debt[.]" 15 U.S.C. § 1691a(b), (d). Thus, one must have contractual liability on debt to be an "aggrieved applicant" under ECOA.

Moreover, Regulation B also states that an application "does not include the use of an

account or line of credit to obtain an amount of credit that is within a previously established credit limit." 12 C.F.R. § 1002.2(f). Broidy Capital, not Plaintiff, is the obligated party. If Amex approves an application for a supplemental cardholder, that merely provides the new individual with spending authority to charge against the account's existing credit. Here, the 2024 Cardmember Agreement confirms that Broidy Capital and the Basic Cardmember are "responsible for all use of the Account by Additional Cardmembers" and "must pay for all charges they make." (ECF No. 11-1 at 4.) The Agreement also states that an Additional Cardmember "do[es] not have an account with [Amex]" and that Plaintiff, as an Additional Cardmember, would never have the right to defer payment of a debt. (*Id.*) Plaintiff thus does not qualify as an "applicant" because he never sought an extension of credit.

*Third*, contrary to Plaintiff's contention (ECF No. 23 at 10–11), Amex's colloquial use of the term "Additional Card applicant" in correspondence is of no legal import. Congress, rather than American Express, has defined who qualifies as an "applicant" for ECOA purposes. 15 U.S.C. § 1691a(b).

*Finally*, even if the application here was one for credit (and it was not), Plaintiff is not an aggrieved party because it was Kang, on behalf of Broidy Capital, who submitted an application. *Cf. Chen v. Chase Bank USA, N.A.*, 393 F. Supp. 3d 850, 852–55 (N.D. Cal. 2019) (involving a plaintiff who "applied for a credit card"). Plaintiff lacks constitutional and prudential standing to vindicate others' procedural notice rights as he has not suffered a personally held injury and has identified no hindrance preventing the Company or Kang from asserting their own rights. *See Warth v. Seldin*, 422 U.S. 490, 502 (1975); *Kowalski v. Tesmer*, 543 U.S. 125, 130 (2004).

    2.  *The ECOA Notice was Sufficient.*

Because ECOA and Regulation B—which provides how creditors must comply with

ECOA—require only a specific, concise reason for a credit denial, Amex's notice identifying Plaintiff's history with American Express sufficed (ECF No. 10 at 15–17). Plaintiff's professed confusion, as a convicted felon, is implausible and his accuracy arguments are legally irrelevant (ECF No. 23 at 14–18).

ECOA only requires "specific reasons for the adverse action," not "long, detailed personal letters." 147 S. Rep. No. 94–589, 94th Cong., 2d Sess., 1976 WL 13838, at *8. Indeed, Regulation B allows concise statements, with no explanation of "how or why" a factor mattered. *See* Official Interpretations of Reg. B, 12 C.F.R. pt. 1002, supp. I, § 1002.9(b)-3. When providing a concise reason like "Poor credit performance with us," a creditor need not explain what about the credit performance was poor, or when, or with regard to what account, or why the poor credit history mattered to the specific decision. *See Barat v. Navy Fed. Credit Union*, 127 F.4th 833, 836–37 (11th Cir. 2025).[3]

First, Amex's reference to Plaintiff's "history with American Express" is materially equivalent to the approved language in *Barat*: it identifies creditor-specific relationship history as the principal basis for Amex's decision, thereby giving Plaintiff enough information to correct any suspected mistakes. *See id.* at 836 (notice enables the applicant to identify if the creditor "has acted on misinformation or inadequate information" and "the statement of reasons gives the applicant a chance to rectify the mistake" (citations and internal quotations omitted)). Moreover, contrary to Plaintiff's contention, Amex stating the action was "in accordance with our policies and procedures" does not turn this notice into a prohibited "internal standards" statement given that

---

[3] To the extent the *Chen* court purports to impose requirements beyond ECOA, Regulation B, and this circuit's controlling precedent, *Barat,* it is erroneous and does not control. *Chen*, 393 F. Supp. 3d at 851–52, 856. Plaintiff's reliance on that nonbinding authority is misplaced and unavailing. (ECF No. 23 at 19.)

Amex also provided a concrete, factual principal reason for the decision. 12 C.F.R. § 1002.9(b)(2) (statement based on creditor's internal standards is insufficient; "statement of reasons . . . must be specific and indicate the principal reason(s) for the adverse action").[4]

Second, the Court need not credit Plaintiff's implausible allegations of ignorance of what "history with American Express" meant. (ECF No. 23 at 17–18.) *Iqbal* makes clear that a claim is plausible only if the pleaded facts permit a reasonable inference, and courts should apply common sense in disregarding allegations that defy it. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). And when documents incorporated by reference contradict conclusory allegations, the documents control. *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007). Here, the record of correspondence with Plaintiff (Decl. Exs. 4–7 (ECF Nos. 11-4–11-7)), contradicts his professed ignorance and demonstrates that his claim is disingenuous and facially implausible; the Court should disregard it. *See Campos v. I.N.S.*, 32 F. Supp. 2d 1337, 1343 (S.D. Fla. 1998) (courts need not accept internally inconsistent factual claims, conclusory allegations, or unwarranted deductions).

Finally, Plaintiff's "gotcha" theory (ECF No. 23 at 2 ("The truth now has come out")) fails. Amex relied on Plaintiff's history with it—prior account closures after improper card use. (*See generally* ECF No. 1-4; Decl. ¶¶ 13–14.) Plaintiff is well-aware that the context of these closures followed publication of his involvement in unlawful backchannel lobbying activities.[5] His

---

[4] The CFPB's Circular cannot expand the statute and, in any event, supports Amex. Plaintiff leans on CFPB Circular 2023-03, which is a nonbinding policy statement. (ECF No. 23, Ex. A (ECF No. 23-1)). The Circular cautions against vague, non-principal reasons and instructs creditors to disclose the actual principal factor(s) even if they differ from the list of form reasons. (*See generally id.*) That is exactly what Amex did; based on its individualized determination, it identified Plaintiff's "history with American Express" as the principle reason for the denial—a reason not found in the sample forms.

[5] Plaintiff's argument also ignores potential application of the Bank Secrecy Act's (the "BSA") anti-tipping provisions, which, if applicable, would significantly limit what information could be disclosed, including to card applicants. *See, e.g.*, 31 U.S.C. § 5318(g)(2); 31 C.F.R. § 1020.320(e); 12 C.F.R. § 21.11(k). As is well-known, for the integrity of the process, it is unlawful to acknowledge the existence (or

attempts to "catch" Amex in an alleged admission of inaccuracy misstates the record—and the law. Indeed, nothing in ECOA forbids consideration of a person's previous account use. That Amex now provides—in litigation—the equivalent of the "long, detailed personal letter" unrequired by ECOA is not somehow an admission that its concise justification in its denial letter was inaccurate. Unlike in *Fischl v. General Motors Acceptance Corp.*, 708 F.2d 143, 148 (5th Cir. 1983), Amex's notice pinpointed the parties' relationship history and is not now belied by additional information about that history. Further, even if Amex's reason was somehow inaccurate (it wasn't), the Eleventh Circuit has explicitly rejected an "accuracy" requirement in a statement of reasons. *Barat*, at 836 ("Section 1691(d) says nothing about the accuracy of the statement of reasons for a creditor's adverse action, only requiring it to be 'specific.'").

### III.   CONCLUSION

In sum, the Court should compel arbitration and in the alternative, dismiss the Complaint with prejudice.

---

lack thereof) of certain BSA information, which is a strong legal and public policy reason to act as Amex did here.

Dated: September 17, 2025

Kelly A. Carrero (admitted *pro hac vice*)
JONES DAY
250 Vesey Street
New York, New York 10281
Telephone: (212) 326 8391
Facsimile: (212) 755 7306
kacarrero@jonesday.com

Respectfully submitted,

*/s/ Eliot Pedrosa*

Eliot Pedrosa (Fla. Bar No. 182443)
Sarah E. Morgado (Fla. Bar No. 1026053)
Ephraim D. Abreu (Fla. Bar No. 1019147)
JONES DAY
Brickell World Plaza
600 Brickell Avenue, Suite 3300
Miami, FL, 33131
Telephone: 305-714-9700
Facsimile: 305-714-9799
Email: epedrosa@jonesday.com
Email: smorgado@jonesday.com
Email: eabreu@jonesday.com

*Attorneys for Defendants American Express Company and American Express National Bank*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 17, 2025, a true and correct copy of the foregoing Motion to Dismiss Complaint and accompanying papers were filed using the Court's CM/ECF system, which will serve all counsel of record.

*/s/ Eliot Pedrosa*
Eliot Pedrosa
*Attorney for Defendants*
