UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 25-cv-80930-DIMITROULEAS/MATTHEWMAN

ELLIOTT BROIDY,

    Plaintiff,

v.

AMERICAN EXPRESS COMPANY and
AMERICAN EXPRESS NATIONAL BANK,

    Defendants.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS [DE 10]

**THIS CAUSE** is before the Court upon an Order of Reference from the Honorable United States District Judge William P. Dimitrouleas [DE 25] to enter a Report and Recommendation on Defendants American Express Company and American Express National Bank's (collectively, "Defendants" or "American Express") Motion to Dismiss ("Motion") [DE 10]. Defendants have also filed the Declaration of Raquel Hernandez [DE 11] in support of their Motion. Plaintiff Elliott Broidy has filed a Response [DE 23], and Defendants have filed a Reply [DE 24]. The Court held a hearing on the Motion on October 23, 2025, and heard argument from the parties. This matter is now ripe for review.

### I.    BACKGROUND

On July 25, 2025, Plaintiff filed a Complaint for Damages, Declaratory Judgment, and Injunctive Relief ("Complaint") [DE 1] against Defendants. The sole count alleges that Defendants failed to disclose a specific reason for the denial of credit under the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691, *et seq*.

According to the Complaint, Plaintiff is the Chairman and Chief Executive Officer of an investment firm, Broidy Capital Holdings, LLC. [Compl. ¶ 12]. In February 2025, he asked the operations manager (Andrew Kang) at Broidy Capital Holdings, which has a corporate account with American Express, to obtain an additional credit card in Plaintiff's name. *Id.* ¶ 16. Mr. Kang then submitted the application, which was denied by American Express by correspondence dated February 21, 2025. *Id.* ¶¶ 16–17. The letter stated that, if Plaintiff wanted to know the reason for American Express's decision or had any questions, he could call a phone number. *Id.* ¶ 18. On April 30, 2025, Plaintiff called the phone number and was told by a customer service representative that his credit application had been denied "due to his history with Amex." *Id.* ¶¶ 20–22. Plaintiff then spoke with an account supervisor who gave him the same response. *Id.* ¶ 23. Plaintiff requested written explanations for the denial of credit several times and was not sent any. *Id.* ¶¶ 21, 24. Thereafter, an employee from the specialist department at American Express told Plaintiff that he was denied a card "due to previous Amex cards." *Id.* ¶ 26.

On May 7, 2025, Plaintiff's counsel sent a letter to American Express' Executive Office requesting a written statement of the specific reason that American Express denied Plaintiff credit. *Id.* ¶¶ 28–29. American Express never responded. *Id.* ¶ 30. On June 18, 2025, Plaintiff's counsel sent a second letter to American Express. *Id.* ¶ 31. Plaintiff then received correspondence dated June 23, 2025, from the Executive Office. *Id.* ¶ 32. The letter stated that Plaintiff's application was declined based on his history with American Express, based on "valid reasons," and "in accordance with our policies and procedures." *Id.* ¶¶ 34, 36. Plaintiff believes his application was declined because of his affiliation with the Republican Party. *Id.* ¶ 38.

## II.     MOTION, RESPONSE, AND REPLY

### A.     Defendants' Motion [DE 10]

Defendants move for an order dismissing the case and compelling Plaintiff to arbitrate his claims pursuant to the Cardmember Agreements and section 4 of the Federal Arbitration Act, 9 U.S.C. §§ 1–16. [DE 10 at 1]. They alternatively move to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). *Id.* Defendants contend that this Court lacks subject matter jurisdiction as Plaintiff lacks Article III standing and statutory standing under the ECOA. *Id.* at 13–15. They also argue that they did, in fact, provide the notice required by the ECOA. *Id.* at 15–17.

Attached to the Motion is the Declaration of Raquel Hernandez, the Assistant Custodian of Records for American Express, along with several exhibits. [DE 11].

### B.     Plaintiff's Response [DE 23]

As to the arbitration issue, Plaintiff claims that (1) he never consented to arbitrate claims with American Express as he was not a signatory to the arbitration agreement; (2) he is suing American Express under the ECOA, which gives him notice rights that belong to him alone; and (3) American Express waived its claim for arbitration by filing a motion to dismiss Plaintiff's claim on the merits. [DE 23 at 2]. Plaintiff further contends that the Equitable Estoppel Doctrine for nonsignatories is inapplicable here. *Id.* at 6–8. As to Defendants' arguments that the case should be dismissed on the merits, Plaintiff responds that he has both statutory and Article III standing and that he has sufficiently stated a claim under the ECOA that American Express did not provide specific reasons for denying him credit and did not disclose its actual reason. *Id.* at 9–18.

### C. Defendants' Reply [DE 24]

In reply, Defendants, for the first time, claim that Utah's estoppel doctrine and Eleventh Circuit case law require Plaintiff to arbitrate his claim under the Cardmember Agreement. [DE 24 at 3]. Defendants also claim that Plaintiff is bound under three separate agreements that compel arbitration of his claims. *Id.* at 4. Defendants assert that Plaintiff's waiver theory fails as they were permitted to seek dismissal on the merits in the alternative to moving to compel arbitration. *Id.* at 5. Defendants additionally argue that Plaintiff's Complaint must be dismissed for lack of subject matter jurisdiction and failure to state a claim under ECOA. *Id.* at 6–11.

## III. APPLICABLE LAW

Under the Federal Arbitration Act ("FAA"), "[a] written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract[.]" 9 U.S.C. § 2. "[T]he FAA requires a court to either stay or dismiss a lawsuit and to compel arbitration upon a showing that (a) the plaintiff entered into a written arbitration agreement that is enforceable 'under ordinary state-law' contract principles and (b) the claims before the court fall within the scope of that agreement." *Lambert v. Austin Ind.*, 544 F.3d 1192, 1195 (11th Cir. 2008) (citing 9 U.S.C. §§ 2–4). "Confronted with a facially valid arbitration agreement, district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Johnson v. N. Broward Hosp. Dist.*, No. 0:24-CV-62361, 2025 WL 2799835, at *1 (S.D. Fla. Oct. 2, 2025) (citing *Calcaterra v. Baptist Health S. Fla., Inc.*, 733 F. Supp. 3d 1349, 1353 (S.D. Fla. 2024); 9 U.S.C. § 3). "In ruling on a motion to compel arbitration, state law governs the interpretation and formation of the arbitration agreement[,] while federal law governs the enforceability of the

arbitration agreement." *Babcock v. Neutron Holdings, Inc.*, 454 F. Supp. 3d 1222, 1228 (S.D. Fla. 2020).

"A motion to compel arbitration is treated generally as a Federal Rule of Civil Procedure 12(b)(1) motion to dismiss for lack of subject matter jurisdiction." *Calcaterra v. Baptist Health S. Fla., Inc.,* 733 F. Supp. 3d 1349, 1353 (S.D. Fla. 2024). "Accordingly, the Court may consider matters outside the four corners of the complaint." *Id.* (citing *Mamani v. Sanchez Berzain*, 636 F. Supp. 2d 1326, 1329 (S.D. Fla. 2009)).

### IV.     ANALYSIS

#### a.   Waiver Issue

As an initial matter, Plaintiff argues that Defendants have waived their claim for arbitration by filing a motion to dismiss on the merits in the same document as the motion to compel arbitration. The Court disagrees.

Plaintiff relies on *Davis v. White*, 795 F. App'x 764 (11th Cir. 2020), which is factually distinguishable. In *Davis*, the defendant initially filed motions to dismiss three complaints for failure to state a claim in October of 2017 and did not file any motions to compel arbitration until March of 2019, after the case had already been heavily litigated. *Id.* at 766–67. The Eleventh Circuit in *Davis* explained that "[w]aiver occurs when, under the totality of the circumstances, 'both: (1) the party seeking arbitration substantially participates in litigation to a point inconsistent with an intent to arbitrate; and (2) this participation results in prejudice to the opposing party.'" *Id.* (citing *Johnson v. Keybank Nat'l Ass'n (In re Checking Account Overdraft Litig.*), 754 F.3d 1290, 1294 (11th Cir. 2014)). Further, the "party arguing for waiver bears a heavy burden of proof in light of the federal policy favoring arbitration." *Id.* (citing *Gutierrez v. Wells Fargo Bank, NA*, 889 F.3d 1230, 1236 (11th Cir. 2018)).

5

Here, Plaintiff has not met his burden of proof to establish waiver. Defendants filed their Motion about one month after the Complaint was filed. They opted to move to compel arbitration and then, alternatively, in the same document, to dismiss the Complaint for lack of jurisdiction and on Rule 12(b)(6) grounds. They filed no other substantive motions prior to filing their Motion and did not significantly participate in litigation inconsistently with an intent to arbitrate. Furthermore, Defendants' limited participation in the litigation clearly did not result in any prejudice to Plaintiff. Thus, the Court finds no waiver of the right to arbitrate here. *See Dockeray v. Carnival Corp.*, 724 F. Supp. 2d 1216, 1222 (S.D. Fla. 2010) (collecting cases which state that filing a motion to dismiss does not automatically waive a party's right to arbitrate a dispute).

### b. <u>Agreements Related to Broidy Capital Holdings</u>

Counsel for all parties agreed at the October 23, 2025 hearing that the Court can consider the exhibits attached to the Motion while determining whether to compel arbitration.

In seeking to compel arbitration, Defendants first rely on the Cardmember Agreement dated December 13, 2024 (the "2024 Agreement"), which lists Andrew Kang as the cardmember name and Broidy Capital Holdings as the company name for a Business Gold Card. [DE 11-1].[1] The 2024 Agreement states that "Utah law and federal law govern this Agreement and the Account." *Id.* at 8 of 13. The "Words we use in the Agreement" section states as follows:

> **We**, **us**, and **our** mean the insurer shown on page 1 of Part 1. Except as provided below, **Basic Cardmember** means the person who applies for this Account or to whom we address billing statements. **Company** means the business for which the Account is established. **You** and **your** mean the Basic Cardmember and the Company. You agree, jointly and severally, to be bound by the terms of this Agreement.

---

[1] The second agreement relied upon by Defendants is the Corporate Services Commercial Account Agreement [DE 11-2], which is related to the 2024 Agreement. The Corporate Services Commercial Account Agreement also contains an arbitration provision. *Id.* at 9 of 13. At the hearing on the Motion, defense counsel acknowledged that the Corporate Services Commercial Account Agreement really does not add anything to Defendants' arguments based on the 2024 Agreement.

*Id.* at 4 of 13. The 2024 Agreement further states that "[w]hen you or an Additional Cardmember, as defined below, use the Account (or sign or keep a card), you agree to the terms of the Agreement." *Id.*

The "Claims Resolution" section of the 2024 Agreement states,

> For this section, **you** and **us** includes any corporate parents, subsidiaries, affiliates or related persons or entities. **Claim** means any current or future claim, dispute or controversy relating to your Account(s), this Agreement, or any agreement or relationship you have or had with us, except for the validity, enforceability or scope of the Arbitration provision. **Claim** includes but it not limited to: (1) initial claims, counterclaims, crossclaims and third-party claims; (2) claims based upon contract, tort, fraud, statute, regulation, common law and equity; (3) claims by or against any third party using or providing any product, service or benefit in connection with any account; and (4) claims that arise from or relate to (a) any account created under any of the agreements, or any balances on any such account, (b) advertisements, promotions or statements related to any accounts, good or services financed under any accounts or terms of financing, (c) benefits and services related to card membership (including fee-based or free benefit programs, enrollment services and reward programs) and (d) your application for any account. You may not sell, assign or transfer a claim.

*Id.* at 9 of 13. The Arbitration section states in relevant part: "You or we may elect to resolve any claim by individual arbitration. Claims are decided by a neutral arbitrator. If arbitration is chosen by any party, neither you nor we will have the right to litigate that claim in court or have a jury trial on that claim…." *Id.* The 2024 Agreement also gives the cardmember forty-five (45) days to reject the Arbitration provision. *Id.* at 10 of 13.

Here, neither Plaintiff nor Defendants have cited a case directly on point where a plaintiff has filed a complaint alleging a violation of ECOA, and the defendant has relied on a corporate cardmember agreement's arbitration clause in moving to compel arbitration. It seems that this is an issue of first impression.

In his Response, Plaintiff relies on *Lubin v. Starbucks Corp.*, 122 F.4th 1314 (11th Cir. 2024), for the premise that a court cannot compel arbitration when the plaintiff is not a signatory

7

to the arbitration agreement, and the plaintiff is seeking to vindicate his rights under federal law. Judge Tjoflat's concurrence in *Lubin* states that the "Court's holding should be read narrowly to apply only where a party to an arbitration agreement seeks to compel a non-party to arbitrate, and only where the non-party's claim arises directly under federal law, as here." *Id.* at 1325.

      The Court first notes that *Lubin* is an Eleventh Circuit case, and the parties agree that they must travel under Utah law for purposes of the 2024 Agreement. Second, in *Lubin*, there was no "related person" language contained within the arbitration agreement at issue. Third, in *Lubin*, the plaintiff had never signed his wife's employment agreement. The relationship between two spouses is inherently and significantly different from that between a CEO and Chairman of a company and the company itself. The CEO and Chairman of a company effectively controls the company and its employees, but one spouse does not similarly control the other spouse. Fourth, *Lubin* involved a plaintiff who was pursuing his statutory right to COBRA benefits. COBRA benefits arise by statute and did not in any way arise from the contract at issue in *Lubin*. Here, on the other hand, Plaintiff's entire lawsuit is based on ECOA, which states in relevant part that "(e)ach applicant against whom adverse action is taken shall be entitled to a statement of reasons for such action from the creditor." 15 U.S.C. § 1691(d)(2). In the instant case, Plaintiff could only have had his agent apply for an additional card in Plaintiff's name under the corporate account by virtue of the terms of the 2024 Agreement; there was no independent statutory right to apply for an additional card. Obviously, the denial, which serves as the basis of the ECOA claims, could not have occurred but for the application permitted by the 2024 Agreement. Thus, Plaintiff's ECOA claim is wholly dependent on the existence of the 2024 Agreement, and the instant case is easily distinguishable from *Lubin*.

8

In opposing arbitration, Plaintiff also relies on page 4 of 10 of the 2024 Agreement, which defines "you" and "your" as the Basic Cardmember and the Company—Mr. Kang and Broidy Capital Holdings in this case. At the hearing, Plaintiff's counsel also emphasized that Plaintiff was not a signatory to the application as Mr. Kang filed the application on Plaintiff's behalf. Counsel further asserted that the application for Plaintiff's card was declined before he could use the card. Thus, according to Plaintiff, he never agreed to the terms of the 2024 Agreement.[2]

Defendants instead rely on the "Claims Resolution" section of the 2024 Agreement, which contains a different definition of "you" than the section upon which Plaintiff relies. Defendants contend that Plaintiff falls within the definition of "you" in the "Claims Resolution" section as he is the Chairman and Chief Executive Officer of Broidy Capital Holdings, and, thus, is a "related person" to Broidy Capital Holdings. Additionally, Defendants maintain that Plaintiff's ECOA claim falls within the definition of a "claim" as defined in the "Claims Resolution" section as it is a claim based upon statute and also arises from or is related to "your application for any account," when "your" was previously defined in the same section as "any corporate parents, subsidiaries, affiliates or related persons or entities."

The Court finds it appropriate to rely on the explicit language contained within the "Claims Resolution" section of the 2024 Agreement. In light of the clear reading of the "Claims Resolution" section of the agreement, and the fact that Plaintiff is a "related person" to Broidy Capital Holdings,

---

[2] The Court rejects Plaintiff's assertion that, "regardless of any close affiliation or related-person status between BCH and Broidy, Broidy is not estopped because he is not a signatory to the Amex agreement and not suing on that contract." [DE 23 at 8]. The law cited simply does not directly support that assertion. The section of *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 358 (5th Cir. 2003), relied on by Plaintiff pertains to agency, a legal theory which is not discussed by Plaintiff in the arbitration section of his response. In fact, Plaintiff only discusses agency as it pertains to Plaintiff's standing to bring this suit. The section of *Solid Q Holdings LLC v. Arenal Energy Corp.*, 2015 UT App 272, ¶ 8, relied on by Plaintiff pertains to the nonsignatory estoppel exception, which this Court will analyze below. Further, both cases are factually distinguishable from the case at hand.

9

the Court finds that Plaintiff is bound by the 2024 Agreement. Further, the statutory claim brought by Plaintiff in this case falls within the definition of a "claim" contained within the Claims Resolution section. The Court understands Plaintiff's argument that he was not a signatory to the 2024 Agreement and that his agent applied for a card in Plaintiff's name under the corporate account. However, Plaintiff's position that the language of the "Claims Resolution" section of the 2024 Agreement does not in any way bind him as a nonsignatory is illogical and is not directly supported by any binding caselaw. Further, Broidy Capital Holdings, which is controlled by Plaintiff, could have timely rejected the arbitration provision and opted not to. It seems to the Court that Plaintiff's attempt to evade the arbitration agreement is somewhat disingenuous.

### c. <u>Agreement Related to Circinus and Plaintiff</u>

Next, even if the Court could not compel arbitration pursuant to the 2024 Agreement, which it can, Defendants rely on an alternative agreement as well—the Agreement Between Corporate Platinum Card Member and American Express Travel Related Services Company, Inc. (the "Circinus Agreement") [DE 11-3]. The Circinus Agreement pertains to "the American Express Corporate Platinum account ending in 2008 opened for Circinus and the accompanying American Express Corporate Platinum Card issued to Plaintiff Elliott Broidy, as the Basic Cardmember for the Circinus Account." [DE 11 ¶ 4]. The Circinus Account was closed on or about February 6, 2021. *Id.* ¶ 10. The "Definitions" section of the Circinus Agreement defines "you" and "your" as the "person named on the enclosed Corporate Platinum Card." [DE 11-4 at 2]. The Circinus Agreement also contains a Claims Resolution section and an Arbitration section. *Id.* at 4. The Claims Resolution section defines "claim" as "any current or future claim, dispute or controversy relating to your account(s), this Agreement, or any agreement or relationship you have or had with us, except for the validity, enforceability or scope of the Arbitration provision." *Id.*

10

The term "claim" includes "claims based upon contract, tort, fraud, statute, regulation, common law and equity." *Id.*

In his written response to the Motion, Plaintiff fails to make any substantive argument about why the arbitration clause in this agreement between American Express, Circinus, and Plaintiff should not be enforced. At the hearing, Plaintiff counsel argued that the Circinus Agreement attached as an exhibit to the Motion does not have any names included on it, making it impossible to tell who was a party to the Circinus Agreement. Counsel similarly argued that Plaintiff cannot authenticate the document. Plaintiff's counsel also asserted that the Circinus Agreement is irrelevant as it was not the agreement under which Plaintiff recently sought an additional corporate card. The Court notes that Plaintiff has failed in any way to rebut the Declaration of Raquel Hernandez [DE 11]. Thus, the authentication objections are without merit. The Court also finds that the Circinus Agreement is, in fact, relevant to its analysis of the motion to compel arbitration.

Since Plaintiff was the basic cardmember for purposes of the Circinus Account and Agreement, he cannot in good faith argue that he was not a party to the agreement. And, the term "claim" in the Circinus Agreement explicitly includes any future claim, dispute, or controversy relating to any agreement or relationship the named American Express cardholders (i.e., Plaintiff) have with American Express. Further, the term "claim" includes claims based upon statute. Thus, even if the 2024 Agreement did not require this Court to compel arbitration, the Circinus Agreement would. Plaintiff is bringing a "future" claim based on statute and also related to the relationship between himself and American Express.

#### d. Nonsignatory Estoppel

Defendants make an alternative argument that, even if this Court rejects their position that it must compel arbitration under the above agreements, the Court should compel arbitration under Utah nonsignatory estoppel principles. In *Ellsworth v. Am. Arb. Ass'n*, 2006 UT 77, ¶ 20, the Supreme Court of Utah explained that, "[t]he rationale behind this exception is that a nonsignatory should be estopped from avoiding arbitration when the nonsignatory seeks to benefit from some portions of the contract but avoid the arbitration provisions." Further, "[i]n cases where estoppel has been implemented *against a nonsignatory,* the nonsignatory has sued a signatory on the contract to his benefit but sought to avoid the arbitration provision of the same contract." *Id.* The Court does find that Plaintiff sought to benefit from some portions of the 2024 Agreement here in that he sought an additional card under the corporate account, and also that he is now trying to avoid the arbitration provisions. However, as there is a basis in the agreements for compelling arbitration, the Court does not need to rely on any nonsignatory estoppel principles.

### V.     CONCLUSION

In light of the foregoing, the undersigned United States Magistrate Judge **RECOMMENDS** that Defendants' Motion to Dismiss [DE 10] be **GRANTED IN PART AND DENIED IN PART**. The Court further RECOMMENDS that the District Judge order the parties to submit the claims presented in the instant action to arbitration, stay the case until such arbitration has been held in accordance with the terms of the agreement[3], and close the case for administrative

---

[3] *See Berardinelli v. EFN W. Palm Motor Sales LLC*, No. 9:23-80908-CV, 2023 WL 11899135, at *2 (S.D. Fla. Aug. 1, 2023) ("While the Eleventh Circuit has on occasion 'affirmed district court orders compelling arbitration and dismissing the underlying cases[,]' *Tuck v. Wyle CAS Grp., Inc.*, No. 5:14-CV-1282-LSC, 2014 WL 5020066, at *2 (N.D. Ala. Sept. 16, 2014), '[t]he Eleventh Circuit has previously indicated that a stay, rather than dismissal, is preferred where a stay is requested[,]' *Stephens v. Checkr, Inc.*, No. 8:19-CV-2252-T-36AAS, 2019 WL 8138178, at *8 (M.D. Fla. Nov. 25, 2019).")

purposes. The Court RECOMMENDS that the Motion be denied to the extent it seeks dismissal of the case.

## NOTICE OF RIGHT TO OBJECT

The parties shall have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with United States District Judge William P. Dimitrouleas. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and Recommendation and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

**RESPECTFULLY SUBMITTED** in Chambers at West Palm Beach, Florida, this 30th day of October 2025.

*[signature: William Matthewman]*
WILLIAM MATTHEWMAN
Chief United States Magistrate Judge