UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO.: 9:25-CV-80930-DIMITROULEAS

ELLIOTT BROIDY,

        *Plaintiff*,

v.

AMERICAN EXPRESS COMPANY and
AMERICAN EXPRESS NATIONAL BANK,

        *Defendants*.

**PLAINTIFF ELLIOTT BROIDY'S OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS**

Pursuant to Local Magistrate Judge Rule 4(b), Plaintiff Elliott Broidy ("Broidy") files these objections to the Magistrate Judge's Report and Recommendation on Defendants' Motion to Dismiss [DE 29]. In his Report and Recommendation ("R&R"), the Magistrate Judge recommends that Plaintiff's Complaint be stayed pending arbitration. In doing so, the Magistrate Judge first relies on a corporate account agreement with American Express ("Amex") on behalf of Broidy Capital Holdings that Broidy never signed. Instead, it was signed by Andrew Kang, Broidy Capital's operations manager. That agreement ("BCH Agreement" [DE 11-1, Ex. 1]) cannot bind a non-signatory. Alternatively, the Magistrate Judge relies on a closed cardholder agreement between Amex and Circinus signed by Broidy in 2008, but an agreement to arbitrate claims related to one account is not an agreement to arbitrate all claims in perpetuity. Finally, the Magistrate Judge suggests that Broidy can be bound by non-signatory estoppel under Utah law, but that doctrine cannot apply since Broidy seeks to vindicate his rights under federal law, not to vindicate any rights as a third-party beneficiary to the BCH Agreement. In short, no theory offered by the Magistrate Judge can legally require Broidy, an admitted non-signatory to the applicable BCH

Agreement, to arbitrate his individual rights under the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691 *et seq*. The Magistrate Judge's R&R should be rejected, Defendants' Motion to Dismiss should be denied, and the case should be permitted to proceed in this Court.

## BACKGROUND

As the Magistrate Judge properly recognized, Broidy's Complaint involves a "sole count [that] alleges that Defendants failed to disclose a specific reason for the denial of credit under [ECOA]." R&R at 1. Broidy is not suing on behalf of Broidy Capital Holdings, of which he is President and Chief Executive Officer. *See generally* Complaint [DE 1]. Nor is Broidy suing over Amex's wrongful denial of his request for an Additional Card under the BCH Agreement. *Id.* Instead, Broidy's claim is personal to him and arises solely under federal law, specifically ECOA. Accordingly, the R&R properly notes that Broidy's claims are "(1) he never consented to arbitrate claims with American Express as he was not a signatory to the arbitration agreement; [and] (2) he is suing American Express under the ECOA, which gives him notice rights that belong to him alone[.]" R&R at 3.

## STANDARD OF REVIEW

If a party timely objects to a magistrate judge's recommendations, 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72 require dispositive motions to be reviewed *de novo* and non-dispositive motions to be reviewed for clear error. Whatever effect that distinction has in other cases, it is of no moment here. Arbitrability is "a question of law for the courts," and "for questions of law, there is no practical difference between review under Rule 72(a)'s 'contrary to law' standard and review under Rule 72(b)'s de novo standard." *PowerShare, Inc. v. Syntel, Inc.*, 597 F.3d 10, 14–15 (1st Cir. 2010). The Magistrate Judge's conclusion is thus reviewed *de novo*.

## ARGUMENT

The Magistrate Judge sets out a proper analysis of when arbitration may be compelled under the Federal Arbitration Act, only to then disregard those governing legal principles and requirements. Initially, the Magistrate Judge properly states the legal framework for determining whether Broidy's individual ECOA claims must be arbitrated:

> Under the Federal Arbitration Act ("FAA"), "[a] written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract[.]" 9 U.S.C. § 2. "[T]he FAA requires a court to either stay or dismiss a lawsuit and to compel arbitration upon a showing that (a) the plaintiff entered into a written arbitration agreement that is enforceable 'under ordinary state-law' contract principles and (b) the claims before the court fall within the scope of that agreement." *Lambert v. Austin Ind*., 544 F.3d 1192, 1195 (11th Cir. 2008) (citing 9 U.S.C. §§ 2–4).

R&R at 4. As noted, to force a party to arbitrate, there must not only be a written contract for arbitration, but the "controversy" must "aris[e] out of such contract or transaction." *Id.* (quoting 9 U.S.C. § 2). Further, the law requires the plaintiff to have "entered into a written arbitration agreement" and that the "claims before the court fall within the scope of that agreement." *Id*. (citation omitted). Here, it is undisputed that Broidy's claim does not "arise" out of any contract with Amex, but rather arises exclusively from ECOA. Equally important, there is no contract signed by Broidy agreeing to arbitrate this claim. Accordingly, the Magistrate Judge's R&R should be rejected, and Defendants' Motion to Dismiss [DE 10] should be denied.[1]

---

[1] The Magistrate Judge did not reach Defendants' claim that Broidy's claim should be dismissed on the merits. Should this Court address that issue, Defendants' motion should be denied for the reasons set forth in Broidy's Response [DE 23].

### A. The BCH Agreement cannot bind non-signatories like Broidy.

As the Magistrate Judge acknowledges, the BCH Agreement dated December 13, 2024, was for BCH and lists Andrew Kang as the cardmember. R&R at 6. "You" and "your" as used in that agreement thus refers to Kang (Basic Cardmember) and BCH (the Company). *Id*. (citing DE 11-1 at 4 of 13). While "Additional Cardmembers" are authorized, they are not bound by the BCH Agreement until they "use the Account (or sign or keep a card)." *Id*. at 7; DE 11-1 at 4 of 13. There is no question Broidy is not an "Additional Cardmember": He was never issued a card. Further, Amex does not claim Broidy was an "Additional Cardmember" subject to the BCH Agreement.

Although Broidy is without question not a signatory or bound by the BCH Agreement, the Magistrate Judge turns to the BCH Agreement's "Claims Resolution" section for support. This was error. If Broidy is not bound by the BCH Agreement in the first place, he cannot be bound by the Claims Resolution provision in that agreement. Yet, because the "Claims Resolution" says it applies to "you" (Kang and BCH), the Magistrate found it nonetheless applied to Broidy because that provision also states it applies to "any corporate parents, subsidiaries, affiliates or *related persons* or entitles." R&R at 7 (emphasis added) (quoting DE 11-1 at 9 of 13). While claims subject to the provision include claims "based upon" a "statute," any claim must still relate to the "Account(s), this Agreement, or any agreement or relationship you have or had with us." *Id.* (quoting DE 11-1 at 9 of 13).

To draw Broidy into this section, the Magistrate Judge asserts that Broidy, as President and CEO of BCH, is "a related person" to the agreement. R&R at 8–10. Of course, there is no definition of "related person" within the BCH Agreement. There is also no legal principle that says any officer, director, or even owner of a company is bound to arbitrate claims personal to him

4

simply because his company entered into an arbitration agreement with another company. Nor can there be without violating the core principle that a non-signatory whose "claim arises directly under federal law, as here" cannot be subject to arbitration. *Lubin v. Starbucks Corp.*, 122 F.4th 1314, 1325 (11th Cir. 2024) (Tjoflat, J., concurring). Here, Broidy seeks "to enforce his own, statutory right to an adequate [ECOA] notice." *Id*. at 1318 (opinion of the Court).

Even though Defendants rely on Eleventh Circuit case law to "require Plaintiff to arbitrate his claim under the Cardmember Agreement," R&R at 4 (citing DE 24 at 3), the Magistrate Judge dismissed *Lubin* as inapplicable because it did not apply Utah law. R&R at 8.[2] Yet, the Federal Arbitration Act on which Defendants rely as the basis for sending the case to arbitration is the very federal law the Eleventh Circuit interpreted in *Lubin*. The Magistrate Judge's attempt to distinguish *Lubin*, R&R at 8, should be rejected because the Eleventh Circuit's holding is directly on point and requires denial of Defendants' attempt to force Broidy's ECOA claim into arbitration.

In *Lubin*, the plaintiff, a beneficiary on his wife's health insurance policy during her employment with Starbucks, brought a claim for violation of his rights under COBRA. While the wife signed an employment agreement with an arbitration clause, the husband did not. Even though his claim under COBRA was related to his use of a benefit that came to him *exclusively* through his wife's employment with Starbucks, the Court concluded that he was not required to arbitrate his COBRA claim because he was not a signatory to the arbitration agreement and his claims arose, not out of the employment contract, but rather out of federal law. *Lubin*, 122 F.4th at 1319.

---

[2] While the BCH Agreement purports to be interpreted consistent with "Utah law and federal law," DE 11-1 at 8, a second agreement also associated with the BCH Agreement offered by Defendants containing the same arbitration provision purports to be governed by *New York* law. R&R at 6 n. 1, DE 11-2 at 9. The Magistrate Judge gave no reason why Utah law, rather than New York law, governed in determining if Broidy's claims were arbitrable. R&R at 6 n.1.

5

Broidy's claim is no different. Even though he *requested* a card under the BCH Agreement, he never signed the BCH Agreement that Amex and the Magistrate Judge claim governs. Although he was denied a card that, if it had been granted *would* have been subject to the BCH Agreement, Broidy's claim arises exclusively under ECOA, not a breach of the BCH Agreement to which he would lack standing to challenge. R&R at 8. This is thus not about a "statutory right to apply for an additional card," *id*., but Broidy's statutory right to be provided specific reasons for the denial of his request for credit. That is no different than the plaintiff in *Lubin* seeking vindication of his COBRA rights that relate to an employee benefit but arise not from that benefit, but from a wholly distinct provision of federal law.

In short, the Magistrate Judge's rejection of *Lubin* was error.[3] Broidy is not a signatory to the BCH Agreement, and he never consented to be bound by it by utilizing the account as an Additional Cardmember. He is therefore not bound by its arbitration provision. Broidy's claim is personal to him, arising exclusively from ECOA, and this Court should hear it.

**B.    The 2008 Circinus Agreement cannot bind Broidy either.**

The Magistrate Judge then turns to two alternative theories. The first suggests that a 2008 agreement Broidy signed on behalf of Circinus in 2008 requires Broidy to arbitrate his ECOA claim related to another account. But the Magistrate Judge admits that the Circinus account closed in 2021, and it is thus of no relevance here. R&R at 10 (citing DE 11 ¶ 10; DE 11-3, DE 11-4). Somehow, the Magistrate Judge reached back in time to an obsolete agreement to hold that, because that 2008 agreement made reference to arbitrating future claims "relating to your

---

[3] The fact Broidy's relationship with BCH is different than the *Lubin* plaintiff's relationship with his wife, R&R at 8, is irrelevant. As noted above, "related party" is undefined and, as interpreted here, could be read to reach *anyone* with a relationship with a bound party. So defined, an arbitration provision would effectively bind anyone.

account(s), this Agreement, or any agreement or relationship you have or had with" Amex, Broidy is obligated to arbitrate any dispute he will ever have with Amex for all eternity. *Id*. at 10–11. Of course, Broidy did not "have or had" an agreement with Amex related to the BCH Agreement in 2008 when the Circinus Agreement was signed. And, without question, the claim here has nothing to do with the Circinus account or that agreement. Even if Defendants could authenticate the Circinus Account [DE 11-4], that agreement has no relevance and neither Defendants nor the Magistrate Judge cite a single case to suggest otherwise. The Magistrate Judge's alternative grounds for arbitration should be rejected.

      C.      **Utah's Non-signatory Estoppel Doctrine does not apply.**

The Magistrate Judge's last theory to force Broidy to arbitrate his ECOA claims is Utah's non-signatory estoppel doctrine. R&R at 12. That doctrine too is inapplicable here, however, because the doctrine only applies when a party takes conflicting litigating positions by seeking to benefit from some portions of a contract while avoiding others—such as an arbitration clause. *Ellsworth v. Am. Arb. Ass'n*, 148 P.3d 983, 989, 2006 UT 77, ¶ 20 (Utah 2006). As the Magistrate Judge rightly recognizes, Broidy is *not* "seek[ing] to benefit from some portions of the contract but avoid the arbitration provisions." R&R at 12 (quoting *Ellsworth*, 148 P.3d at 989, 2006 UT 77, ¶ 20). That fact should have been fatal to any reliance on the doctrine. The Magistrate Judge was thus wrong to rely on it.[4]

---

[4] The Magistrate Judge's estoppel ruling is especially implausible given that "the nonsignatory estoppel exception has never been applied in Utah." *Ellsworth*, 148 P.3d at 989 n.11, 2006 UT 77, ¶ 19 n.11.

**CONCLUSION**

Broidy is not a signatory to the BCH Agreement.  He is not suing on that contract.  He is bringing a federal statutory claim that is personal to him.  Thus, *Lubin* is squarely on point, and Broidy cannot be compelled to arbitrate his ECOA claim against his will.

The Magistrate Judge's R&R [DE 29] should be rejected, and Defendants' Motion to Dismiss [DE 11] should be denied.

Respectfully submitted,

<u>*/s/ Edward H. Trent*</u>
H. Christopher Bartolomucci*
Edward H. Trent (FBN 957186)
Joshua J. Prince*
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
Telephone: (202) 787-1060
Facsimile: (202) 776-0136
cbartolomucci@schaerr-jaffe.com
etrent@schaerr-jaffe.com
jprince@schaerr-jaffe.com

*Admitted *pro hac vice*

*Counsel for Plaintiff Elliott Broidy*

Dated:  November 13, 2025